[No. 24783. Department Two. March 21, 1934.]

J. A. REEVE, *Respondent,* v. MARIE LOUISE ARNOLDO *et al., Appellants.*[1]

*Dore, Beeler & Haven,* for appellants.

*Vanderveer & Bassett* and *Wilbur Zundel,* for respondent.

GERAGHTY, J.—This action was brought by plaintiff to recover from defendants damages for breach of a written contract. The case was tried to the court sitting with a jury. A verdict was returned in favor of plaintiff. Motions for judgment notwithstanding the verdict, or in the alternative for a new trial, were made and overruled. From the judgment entered upon the verdict, this appeal is taken.

The written contract, upon the breach of which the

[1]Reported in 30 P. (2d) 943.

action is based, was entered into by respondent and appellant Marie Louise Arnoldo on or about August 20, 1930. It recited that appellant was the owner of forty acres of land upon which stood fir and hemlock trees which, when converted into logs, would yield approximately two million feet of lumber; that appellant desired to convert the trees into logs and deposit them in Mud Lake, King county, for sale to respondent and the conversion of them by him into lumber and other timber products. Immediately upon the execution of the agreement, appellant was to commence delivering logs of standard lengths, unless otherwise requested by respondent, and for the period of five weeks thereafter deliver not less than 50,000 feet board measure per week, and thereafter, until the timber should have been entirely cut, not less than 75,000 feet per week. The respondent on his part agreed that, after commencement of operations, a monthly minimum of 200,000 feet of timber would be purchased by him, cut into lumber, sold and paid for.

The contract provided the rate per thousand feet to be paid by respondent for timber delivered to him at the lake and run through his mill. It was provided that, for the initial five weeks of operation, respondent would pay appellant in cash, on the Saturday of each week, $2.75 per thousand feet board measure for the logs delivered in the lake within the week; the balance of the agreed price to be paid to a trustee for application by him in the manner set out in the contract and a supplemental contract executed at the same time. The agreement contained other provisions not necessary to refer to here.

The supplemental agreement named a trustee, to whom all money realized from the sale of logs by the respondent, except the weekly payments to be made di-

rectly during the initial five weeks, must be paid, for disbursement in accordance with the provisions of the agreement; and as security to appellant, it was agreed that, upon the sale of any lumber at the mill, respondent would notify the trustee and appellant of the quantity, description, price and purchaser of lumber sold, and would, at the time of sale, direct the purchaser to pay the amount due to the trustee.

While the agreements were made nominally in the name of the wife, appellant Marie Louise Arnoldo, all the negotiations in relation to it and all subsequent transactions were conducted by the husband, appellant Louis Arnoldo, and they will hereafter be referred to, in accordance with their true relation to the contract, as jointly interested.

Following the agreement, appellants commenced to cut and deliver logs to Mud Lake, and respondent, on the 5th of September, 1930, commenced to operate the mill. Operations continued until the thirteenth of that month, when the mill shut down temporarily. Thereafter, it appears to have been run intermittently until October 15, 1930, when operations finally ceased. Respondent claims the temporary stoppage and final abandonment of operations were caused by the appellants' breach of the contract in refusing to deliver logs pursuant to its terms. The appellants, on the other hand, claim that respondent breached the contract by failure to make the weekly payments for the logs delivered, by failure to account to the trustee for money received from the sale of lumber, and by failure to report the sales and names of purchasers, as agreed on.

The present action was begun in February, 1932, and sought recovery from appellants for damages resulting from the breach of their contract. The appellants, in their answer, denied a breach of the contract. They

alleged affirmatively failure on the part of respondent to make the payments agreed on for the timber delivered; that they were unable to further continue the delivery of logs to the lake for lack of funds caused by respondent's failure to make payment; and counterclaimed for sums alleged to be due from respondent for lumber sold by him and not accounted for.

■■■. Appellants assign error in the refusal of the trial court to grant their motions for judgment notwithstanding the verdict, or in the alternative, a new trial. A painstaking examination of the record discloses that the evidence was in sharp conflict upon all the issues of fact in the case. A detailed statement of the evidence or an attempt to reconcile the conflicting claims of the parties, would answer no useful purpose. The case was clearly one for the jury. Little objection was made to the evidence introduced, and the issues were submitted upon instructions to which no exceptions were taken.

This court has repeatedly held that no element of discretion is involved in passing upon a motion for judgment notwithstanding the verdict. The motion should be granted only where the court can say, as a matter of law, that there is no evidence or reasonable inference sufficient to sustain the verdict, and that reasonable men could not reach such a conclusion upon the evidence. *Allingham v. Long-Bell Lumber Co.,* 136 Wash. 681, 241 Pac. 298; *Ticknor v. Seattle-Renton Stage Line,* 139 Wash. 354, 247 Pac. 1, 47 A. L. R. 252; *White v. Rigg,* 143 Wash. 46, 254 Pac. 459; *Nelson v. Booth Fisheries Co.,* 165 Wash. 521, 6 P. (2d) 388.

■■■ Appellant Louis Arnoldo urges that, as to him, at least, the motion for judgment notwithstanding the verdict should have been granted, for the reason that the contract was made with his wife in relation to her

separate property, and that, if the judgment is to stand, it should run against her alone. A fair appraisal of the evidence does not sustain this view.

While it appears that title to the forty-acre tract stood in the name of the wife, title was acquired during marriage, and it will be presumed, in the absence of a showing to the contrary, that title is held for the benefit of the community. This is so when title is held by the husband; it is no less so when title is in the other spouse. The husband testified that title to the tract was placed in the wife's name because other property stood in his name. Throughout the record, it appears the husband conducted all the business, and, except for the formal execution of the contract in the name of the wife, assumed the relation of owner. In his direct examination, he testified that he had entered into the contract with respondent because he was in trouble with several parties and needed some cash money.

The husband and wife were joined as defendants in the complaint, and judgment was prayed against them. They answered jointly, the husband taking no steps to be dismissed from the action. In their cross-complaint, after pleading the execution of the contract, they alleged that, in pursuance of its terms, they cut and delivered to respondent at Mud Lake the quantity of logs here in controversy. It does not appear from the record that the separate character of the transaction was urged upon the court before the argument for judgment notwithstanding the verdict. There was no error in the trial court's denial of the motion for judgment notwithstanding the verdict as to both appellants.

Appellants, in support of their motion for a new trial, submitted three affidavits reciting newly discovered evidence. In the course of the trial, the respondent's testimony and account books showed the

sale of quantities of lumber to Alex Cregini and Tougaw & Olson. Affidavits by Cregini and Olson were submitted, showing the purchase by them from respondent of a greater quantity of lumber than that testified to by respondent. These affidavits were clearly cumulative, and, under well recognized rules, did not furnish ground for granting a new trial. *Smith v. Kneisley,* 175 Wash. 29, 26 P. (2d) 387. A third affidavit, made by appellant Louis Arnoldo himself, merely alleged a breach of the contract by respondent in not reporting to Harris, as trustee, the quantity, description, price and purchaser of lumber sold. This matter was gone into at the trial. Aside from the fact that these matters were involved in the trial, the case had been at issue for nearly a year, and appellants had abundant opportunity to prepare their case; especially so in view of the circumstance, clearly shown by the record, that Louis Arnoldo kept in close touch with respondent's transactions during the time the mill was operated.

The jury, guided by proper instructions upon the law, having found the facts in favor of respondent, the court would not be warranted in disturbing the verdict.

The judgment will be affirmed.

BEALS, C. J., BLAKE, TOLMAN, and MAIN, JJ., concur.