[No. 26170. Department Two. August 24, 1936.]

JOEL LAGER et al., Respondents, v. EMMA C. BERGGREN, as Administratrix, Appellant.[1]

[1]Reported in 60 P. (2d) 99.

*Kumm & Garbe,* for appellant.

*Trumbull, Severyns & Trumbull* and *W. J. Daly,* for respondents.

BEALS, J.—Edward Berggren was for many years in the employ of a lumber company operating in Jefferson county. Plaintiff Joel Lager was also for a long time in the employ of the same company, although in a different department. The two men were friends, and from 1919 to 1926, Mr. Berggren occupied a room in the Lagers' home at Port Ludlow, while boarding at the hotel operated by his employer.

During the year 1926, Mr. Berggren paid $2,500 for a slightly improved forty-acre tract (which land is the subject matter of this controversy), taking title thereto in his own name. Shortly thereafter, Mr. Berggren expended over one thousand dollars in remodeling a small house located on the property; whereupon Mr. and Mrs. Lager and their children took possession of the dwelling, with the exception of two rooms which Mr. Berggren occupied.

Mr. Berggren was well along in years, and retired from his employment about the time he purchased the property above referred to. Thereafter, the Lagers furnished him board, and Mrs. Lager did the work and

laundry for the entire household. This arrangement continued until August, 1934, when Mr. Berggren, being ill, was taken to Seattle for medical attention, where he remained until his death in December of the same year. Defendant, Emma C. Berggren, was appointed administratrix of Mr. Berggren's estate, and has ever since been acting as such.

Some time after Mr. Berggren's death, Mr. and Mrs. Lager instituted this action, alleging in their amended complaint that Mr. Berggren orally promised plaintiffs that, if they would purchase a parcel of real estate and construct a dwelling thereon, in which he could live with them, he (Berggren) would advance the necessary funds, and that, pursuant to this agreement, the property in question was purchased, and the arrangement hereinabove referred to was put into effect. Plaintiffs also alleged that Mr. Berggren agreed to pay forty-five dollars per month for his lodging, board and laundry; this amount to be credited each month upon the money which Mr. Berggren had advanced, without including interest. Plaintiffs further alleged that, pursuant to this agreement, they had repaid to Mr. Berggren the entire amount which he had advanced for the property, and in addition thereto, had expended in labor and material in improving the property approximately $3,700.

Plaintiffs further alleged Mr. Berggren's death; the appointment of Emma C. Berggren as administratrix of his estate; that plaintiffs had demanded of the administratrix performance of the contract, or that, in the alternative, the estate pay to plaintiffs $4,833.56; and that the administratrix had rejected plaintiffs' demand. Plaintiffs prayed for specific performance of the contract which they alleged, by a conveyance of the land to them, or, in the alternative, that if such performance should not be decreed, they have judgment

for all sums which they had paid to Mr. Berggren or expended for the benefit of the property. Plaintiffs also prayed for general relief.

The defendant answered, denying the material allegations of plaintiffs' complaint, affirmatively pleading that the contract alleged was within the statute of frauds as not to be performed within one year and as resting only in parol, and that plaintiffs had been guilty of laches; defendant also alleged that plaintiffs were in possession of the property, and demanded that it be adjudged that the land belonged to the estate and that title thereto be quieted in favor of the estate and against plaintiffs. Plaintiffs having denied in their reply the affirmative allegations in the answer, the cause came on regularly for trial before the court sitting without a jury.

It appears from the statement of facts that, at the outset, both counsel and the court referred to two actions between the same parties, and plaintiffs' counsel moved to consolidate the two cases for the purpose of trial. No objection being interposed, the court ordered that the cases be consolidated. After the trial, in its oral summation, the court recognized that the evidence disclosed a complicated state of facts, and that, referring to the parties to the action, "it is mighty hard to try to ascertain just what the exact agreement was between them." The court continued:

"There is evidence,—although it might be called random evidence—but there is positive evidence by parties that the deceased had in mind in some way to furnish a home, or wanted to furnish a home for the plaintiffs, some way. He was friendly toward them.

"I have in mind he never paid any board, excepting what the use of the property might be—he never paid any cash for it—and the evidence, no doubt, shows that at times these parties paid him some money, which he put down in his book as rent.

"I have no doubt in my own mind but the deceased meant for these parties to have this property—I have no doubt at all.

"Now, how, under the law that hedges us all in, should the court do justice to both parties and be fair, that is a mighty hard thing to state."

The court concluded by directing that a decree be entered directing conveyance of the property to plaintiffs, and that, if the property be not conveyed, plaintiffs have a judgment against the estate in the sum of three thousand dollars. From this decree, defendant has appealed.

The statement of facts bears two numbers, indicating the cases which were consolidated for trial. In its oral memorandum decision, the court referred to neither case specifically, but merely directed the entry of a decree in terms as above stated. The decree is entitled in one case only, and the notice of appeal bears a similar caption.

Error is assigned upon the awarding of the relief prayed for by respondents by way of specific performance, and upon the failure of the trial court to quiet the estate's title to the real property as against respondents. Appellant vigorously attacks the decree and argues that the same is nowise supported by the evidence.

Certain principles of the law in regard to the elements which must be present in order to grant a decree awarding specific performance are well stated in Corpus Juris as follows:

"To enable a court to decree specific performance of an alleged contract there must be a valid, binding, and concluded or completed contract between the parties to the suit; the court cannot make a contract for the parties and then decree its specific performance, nor can it require the performance of any contract other than the one which the parties themselves

have made. There must have been mutual assent and understanding, or a meeting of the minds of the parties, arrived at by a clear and explicit acceptance of a proper and unrevoked offer, and unaffected by fraud, duress, undue influence, or mistake. All the other essential elements of a valid executory contract, such as competent parties, a legal subject matter, and a valuable consideration, must be present before a court of equity will enforce specific performance. There must be mutuality of obligation, and all the material terms of the contract must be complete and reasonably certain, as well as fair, reasonable, just, and equitable." 58 C. J. 929.

"To warrant a decree of specific performance thereof, a contract must be definite and certain, and free from doubt, vagueness, and ambiguity, in its essential elements and material terms. Clearness is required. The terms of the contract must be so clear, definite, certain, and precise, and free from obscurity or self-contradiction, that neither party can reasonably misunderstand them, and the court can understand and interpret them, without supplying anything or supplanting vague and indefinite terms by clear and definite ones through forced or strained construction." 58 C. J. 930.

"A court of equity will not decree specific performance of a contract which does not fix the price or consideration clearly, definitely, certainly, and unambiguously, or provide a way by which it can be fixed with certainty." 58 C. J. 937.

Generally speaking, these rules have been discussed and approved by this court in several cases. *Huston v. Harrington,* 58 Wash. 51, 107 Pac. 874; *Marshall v. Hillman Inv. Co.,* 151 Wash. 529, 276 Pac. 564; *Swank v. Liquidators,* 160 Wash. 50, 294 Pac. 563.

It should also be noted that actions against the estates of deceased persons, in which it is sought to appropriate the assets of the estate in settlement of alleged oral contracts, are not favored, and, as we said

in the case of *Lohse v. Spokane & Eastern Trust Co.,* 170 Wash. 46, 15 P. (2d) 271, such contracts must be proved by evidence that is "conclusive, definite and certain, and beyond all controversy."

In the case at bar, of course, respondents could not testify concerning their transactions with the deceased. They did state that they had worked in and about the premises and made certain improvements thereon. Several of respondents' children testified, one married daughter stating that she and her husband, during the year 1934, started to build a house on the property under an agreement with Mr. Berggren that they would pay one dollar a year ground rental; that she paid a dollar for a year's rent, and that Mr. Berggren then handed the dollar to the witness' small son. Under respondents' theory of the case, they had more than paid for the property by 1934, and that their daughter, as it appears with respondents' knowledge, then recognized that Mr. Berggren was entitled to even a nominal rent for the use of a small portion of the land, is inconsistent with respondents' theory.

It clearly appears from testimony given by respondents' witnesses that respondent Joel Lager, from 1926 to 1932, made to Mr. Berggren many twenty-dollar payments, aggregating over seven hundred dollars, for which Mr. Berggren wrote out receipts, noting on the stubs in his receipt book that the payments were for rent. These payments were continued until September, 1932, after which, because of financial inability, no more payments were made. It appears, however, that at the time indicated, according to respondents' theory, they had, by a considerable amount, overpaid the amount which they testified they were to pay for the property.

Several disinterested witnesses testified that Mr.

Berggren had told them that respondents were to have the place; that he was living with respondents and was going to receive the value of the property in board; some witnesses stating that Mr. Berggren said the place was Mr. Lager's. At the time most of these statements by the deceased purport to have been made, it is admitted that respondents were making payments to deceased, which fact clearly indicates that the property did not then belong to respondents. Mr. Berggren each year paid the taxes on the property, and, as stated by Mr. Lager himself, did a good deal of work in and about the place.

It is impossible, giving respondents' evidence the most favorable construction, to find that there was any definite contract between the parties. No purchase price for the property was shown; there is no evidence that Mr. Berggren agreed to pay any specific amount for his board and the other service received; and the evidence falls far short of that clear and convincing proof which the law requires in such a case as this before a decree of specific performance may be granted, particularly against the estate of a deceased person.

In the case of *Henry v. Henry,* 138 Wash. 284, 244 Pac. 686, the plaintiff sought a decree of specific performance of an oral contract to bequeath property by will. It was held that the will which the testator made should stand, the court being of the opinion that the will should not be held to be overcome by testimony as to

". . . random, isolated, indefinite statements to acquaintances or strangers, and sometimes business rivals, nor by more positive statements by the immediate family of the appellant (claimant) whose interest it is not necessary to comment upon.''

In the same case, considering the question presented, this court said:

"With recurring frequence this court is being called on to establish claims such as the one presented here, which are in effect the assertion of oral wills. It is useless to repeat what has been so often said in this character of cases, that the courts look upon such claims with suspicious eyes. The evasion of the statutory requirements that some evidence of such an agreement should be in writing, is not to be easily tolerated. Even a slight experience justifies the conclusion that the overwhelming majority of such claims are founded upon no greater basis than a desire to acquire property which was never intended to be so disposed. The evidence, to sustain such oral promises, we have said must be conclusive, definite, certain and beyond all legitimate controversy. *Frederick v. Michaelson, ante* p. 55, 244 Pac. 119; *Eidinger v. Mamlock, ante* p. 276, 244 Pac. 684; *Fields v. Fields,* 137 Wash. 592, 243 Pac. 369. We are prepared to make, and are justified in making, a statement even more stringent than that, and to hold that one seeking to establish an oral contract, whereby property of the deceased is sought to be taken, must establish all the elements of the contract and a right to have it enforced beyond all reasonable doubt."

The opinions of this court in the cases of *Frederick v. Michaelson,* 138 Wash. 55, 244 Pac. 119, and *Clark v. Crist,* 178 Wash. 187, 34 P. (2d) 360, are also in point in this connection.

Respondents cite many authorities, but we find none which indicates that a decree of specific performance should be entered upon such vague and unsatisfactory evidence as is contained in the record now before us. The statements which Mr. Berggren is said to have made are not consistent, and while very likely in the main truthfully repeated, indicate no more than an intention to do something for respondents, which intention it does not appear was ever carried into effect.

We hold that respondents wholly failed to prove any contract which entitles them to the decree of specific performance which the trial court entered.

The evidence before us shows beyond question a complicated and confused financial relationship between respondents and Mr. Berggren. While we do not pass upon the weight of the evidence, some of the testimony indicates that respondents expended money and labor for the benefit of the property, which, under our holding that no specific performance should be decreed, may entitle respondents to some relief under the doctrine of "unjust enrichment." Respondents also, beyond question, furnished Mr. Berggren with board and other service, which the trial court we think correctly estimated as worth a dollar a day.

Two actions were consolidated, and while only one decree is before us for review, the evidence is all here, and from the statement of facts it appears that respondents were granted no relief by any other judgment, the court having directed merely the entry of one decree in their favor. The action was one in equity, and under the broad rules governing equitable proceedings, we should not, while reversing the decree as entered, direct that the action be dismissed.

The decree appealed from is accordingly reversed, and the cause remanded with instructions to the trial court to consider the record in the case and any further evidence which may properly be produced by either party, and upon the record as finally completed enter such a judgment as shall appear to be just and consistent with the law applicable thereto.

MAIN, TOLMAN, and BLAKE, JJ., concur.

MILLARD, C. J. (dissenting)—The judgment should be affirmed. The consideration was sufficient on which

472

to base the award for conveyance. There was ample part performance to take this case out of the statute of frauds, and the defense of laches is without merit.

